UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SMITH,

   Plaintiff,

               Case No. 16-13737
v.               Hon. Denise Page Hood

METROPOLITAN LIFE
INSURANCE COMPANY,

   Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM
THE ADMINISTRATOR'S DECISION [Dkt. No. 9], DENYING
PLAINTIFF'S MOTION FOR REVERSAL OF ADMINISTRATIVE
DENIAL OF CLAIM FOR BENEFITS [Dkt. No. 10] and
DISMISSING PLAINTIFF'S CAUSE OF ACTION</u>**

**I. INTRODUCTION**

Plaintiff Robert Smith is an intended beneficiary of his late wife Debra T. Smith ("Mrs. Smith") pursuant to the terms and provisions of the Dependant Life Insurance ("DLI") and the Voluntary Accidental Death and Dismemberment ("AD&D") Insurance Plan Policy No. 73903 purchased by his employer FCA L.L.C. ("FCA"). Following the tragic death of Mrs. Smith, Plaintiff made a timely claim for disbursement of DLI and AD&D benefits with the Policy administrator, Defendant Metropolitan Life Insurance Company (hereinafter "Defendant"). Defendant paid

1

Plaintiff's claim for DLI benefits, but denied his claim for AD&D benefits because of the manner of Mrs. Smith's death. Plaintiff filed a breach of contract suit in Oakland County Circuit Court. Defendant removed the case to this Court because the pertinent issues of Plaintiff's claims are governed by the Employment Retirement Income Security Act ("ERISA").

Defendant and Plaintiff filed cross-dispositive motions on February 16, 2017 [Dkt. Nos. 9, 10], and Defendant filed a response to Plaintiff's motion. The Court, having concluded that the decision process would not be significantly aided by oral argument, ordered that the motions be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). [Dkt. No. 13] For the reasons that follow, the Court grants Defendant's motion, denies Plaintiff's motion, and dismisses Plaintiff's cause of action.

**II.   BACKGROUND**

Plaintiff participated in the Voluntary Group Accident Insurance Program ("Plan") available to FCA employees, and he insured Mrs. Smith under Dependent Life Insurance ("DLI") and Voluntary Accidental Death and Dismemberment Insurance ("AD&D) policies. Mrs. Smith died on February 28, 2016. According to the Death Certificate, Mrs. Smith died after she "Ingested washer fluid in craving for alcoholic beverage." [Dkt. No. 9, Ex. A] The Death Certificate includes a section for

2

identifying the manner of death, with the following options: "Accident, Suicide, Homicide, Natural, Indeterminative or Pending." *Id.* The Death Certificate reflects that the medical examiner determined that Mrs. Smith's manner of death was "Accident." *Id.*

On March 15, 2016, Plaintiff applied for DLI and AD&D benefits under the Plan because of his wife's death. The Plan defines the eligibility criteria for AD&D benefits as follows:

> **ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**
> If You or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to US. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.
>
> Direct and Sole Cause means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.
>
> We will deem a loss to be the direct result of an accidental injury if it results from unavoidable exposure to the elements and such exposure was a direct result of an accident.

[Dkt. No. 9, Ex. B] The Plan does not define "accidental injury."

The Plan provides that some events preclude an award of AD&D benefits. In relevant part, the Exclusions section provides:

> **EXCLUSIONS**
> We will not pay benefits under this section for any loss caused or

contributed to by:

1. physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity;

\* \* \* \* \*

3. suicide or attempted suicide;

\* \* \* \* \*

7. the voluntary intake or use by any means of:
    - any drug, medication or sedative, unless it is:
        - taken or used as prescribed by a Physician; or
        - an "over the counter" drug, medication or sedative taken as directed;
    - alcohol in combination with any drug, medication, or sedative, or
    - poison, gas, or fumes.

[Dkt. No. 9, Ex. B]

After reviewing the information on the Death Certificate, Defendant paid the DLI benefit to Plaintiff but, by a letter dated April 15, 2016, advised him that the AD&D benefit claim was being denied. [Dkt. No. 9, Ex. D] Defendant's letter set forth the Plan's eligibility criteria for AD&D benefits, including the exclusion for the voluntary intake or use by any means of a poison. In explaining the basis for the denial of Plaintiff's AD&D benefit claim, Defendant stated:

> According to our records, the death certificate issued by the State of Michigan lists the decedent's cause of death as "Methanol Intoxication and Complications Thereof," with other significant conditions listed as "Alcoholic Liver Disease; Hypertensive and Arteriosclerotic

> Cardiovascular Disease." It further states the injury occurred as the decedent "ingested washer fluid in craving for alcoholic beverage." The Policy excludes any death that is caused or contributed to by physical illness as well as the voluntary intake of any poison. The insured's liver and heart disease contributed to her passing and her passing was caused by ingesting washer fluid which would be deemed poisonous if ingested.
>
> Therefore, based on the record before MetLife, we must deny your claim for Voluntary Dependent Accidental Death Insurance.

[Dkt. No. 9, Ex. D] Defendant advised Plaintiff that he could file an appeal from the initial adverse benefit determination.

On June 14, 2016, Plaintiff, through his attorney, filed an appeal from the initial determination. [Dkt. No. 9, Ex. E] Plaintiff's letter noted that the Death Certificate listed the cause of death as methanol intoxication and complications thereof and that Mrs. Smith passed away after she ingested washer fluid in craving for alcoholic beverage. *Id.* Plaintiff stated that "In ingesting the washer fluid, Mrs. Smith was under the genuine assumption that this would [a]ffect her in the same manner that an alcoholic beverage would." *Id.*

Plaintiff acknowledged that it was "no secret that Mrs. Smith suffered from these conditions" (Alcoholic Liver Disease, Hypertensive and Arteriosclerotic Cardiovascular Disease) but contended that these conditions were not the cause of her immediate death. *Id.* "The direct and proximate cause of her accidental injury, which again was highlighted on her death certificate, was the ingestion of washer

fluid." *Id.* Plaintiff stresses that the medical examiner identified the manner of death as "Accident." *Id.*

In his appeal, Plaintiff submitted an article from MedlinePlus that described the effects of windshield washer fluid, part of which stated:

> Windshield washer fluid is a brightly colored liquid made of methanol, a poisonous alcohol.
>
> \* \* \* \* \*
>
> Methanol, the main ingredient in windshield washing fluid, is extremely poisonous. As little as 2 tablespoons can be deadly to a child. About 2 to 8 ounces can be deadly for a adult. Blindness is common and often permanent despite medical care.

[Dkt. No. 9, Ex. E]. Plaintiff's appeal also included articles about alcoholic liver disease, hypertensive heart disease, and arteriosclerosis. *Id.*

On July 19, 2106, Defendant issued its final adverse benefit determination with respect to the AD&D benefits. [Dkt. No. 9, Ex. F] Defendant reiterated the applicable provisions of the Plan, including the exclusion for the voluntary intake or use by any means of a poison, and stated:

> According to our records, the death certificate issued by the State of Michigan lists the decedent's cause of death as "Methanol Intoxication and Complications Thereof," with other significant conditions contributing to death but not resulting in the underlying cause of methanol intoxication listed as "Alcoholic Liver Disease; Hypertensive and Arteriosclerotic Cardiovascular Disease." It further states the injury occurred as the decedent "ingested washer fluid in craving for alcoholic beverage." Methanol is a poisonous substance that is used to keep liquids

6

from freezing, as a fuel, etc. Washer fluid is typically characterized as a hazardous substance and its containers are typically marked with poison labels and warnings.

Because (i) the Plan excludes any death that is caused or contributed to by physical illness and the insured's liver disease contributed to her passing, and (ii) the Plan also excludes any death caused or contributed to by the voluntary intake of any poison and her death was caused by the ingesting of washer fluid which is poisonous when ingested, based on the record before MetLife, we denied your client's claim for Voluntary Dependent Accidental Death Insurance on April 14, 2016.

\* \* \* \* \*

Because it is objectively foreseeable that ingesting washer fluid would cause an injury and thus is not an accident and because ingesting a poisonous liquid like washer fluid meets the Plan's exclusion for the voluntary intake of poison, we must uphold our determination to deny your client's claim for Voluntary Dependent Accidental Death Insurance benefits.

[Dkt. No. 9, Ex. F]

## III. ANALYSIS

### A. Legal Standard

The general rule in cases challenging the denial of employee benefits under ERISA Section 502(a)(1)(B) is that the district court reviews the plan administrator's decision *de novo* (unless the plan gives the administrator discretionary authority to determine participants' eligibility for benefits, in which case the court must apply the highly deferential arbitrary and capricious standard of review). *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Cox v. Standard Ins. Co.*, 585 F.3d

7

295, 299 (6th Cir. 2009). In this case, the parties agree that the Court should conduct a *de novo* review of Defendant's decision.

The *de novo* standard requires the reviewing court to "determine whether the administrator made a correct decision," *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002), based only upon consideration of the evidence presented to the claims administrator. *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990). "The administrator's decision is accorded no deference or presumption of correctness." *Hoover*, 290 F.3d at 808-09. *See also McCollum v. Life Ins. Co. of N. America*, 495 F. App'x 694, 696 (6th Cir. 2012) ("Under *de novo* review, a reviewing court weighs the evidence and determines whether the administrator made the correct decision, giving no deference or presumption of correctness to the administrator's decision. Some courts have explained that the question on *de novo* review is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence."). A court does not have to address a defendant's potential conflict of interest in determining eligibility for benefits when the review is *de novo*. *Conway v. Reliance Std. Life Ins. Co.*, 34 F.Supp.3d 727, 730 (E.D. Mich. 2014).

**B.    Analysis**

There is no dispute that Mrs. Smith's intake of the washer fluid was voluntary.

8

As Plaintiff states, "In ingesting the washer fluid, Mrs. Smith was under the genuine assumption that this would [a]ffect her in the same manner that an alcoholic beverage would." [Dkt. No. 10, PgID 387] Defendant argues that there are two bases for denial of Plaintiff's claim to AD&D benefits: (1) the Plan specifically excludes from entitlement to the AD&D benefits the voluntary intake of a poison; and (2) even if the intake of the washer fluid was an "accidental injury," it was not the direct and sole cause of Mrs. Smith's death because her conditions of alcoholic liver disease, hypertensive and arteriosclerotic cardiovascular disease contributed to her death. Plaintiff argues that the direct and sole cause of the death of Mrs. Smith was "Accident," as Mrs. Smith thought she was ingesting a fluid that would provide the same effect as alcohol, not the effect of a poison.

Plaintiff suggests that, because Mrs. Smith's death was an accident, the question before the Court is whether "a reasonable person, with the background and characteristics similar to [Mrs. Smith], would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 336 (6th Cir. 2009). Plaintiff asserts that, because Mrs. Smith was a troubled alcoholic and addicts "will do almost <u>anything</u> in an effort to reach the euphoric feelings they seek," she (as a reasonable addict) would "seek out other substances outside of your run-of-the-mill alcoholic beverage just to become

9

intoxicated, including drinking washer fluid which she reasonably believed would get her drunk much quicker than a[] standard alcoholic beverage." [Dkt. No. 10, PgID 394-95 (emphasis in original)] For this reason, Plaintiff contends that Mrs. Smith's death was entirely accidental. Citing *Wickman v. Northwestern N'tl Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990).

Defendant argues, and the Court concludes, that a reasonable person, with background and characteristics similar to Mrs. Smith, would have viewed injury or death as highly likely to occur as a result of drinking windshield washer fluid. There is no indication that Mrs. Smith had any functional challenges other than being an alcoholic. There is no indication that she could not read labels or had any learning or intellectual impairment. As the article from MedlinePlus notes, windshield washer fluid is extremely poisonous. The poisonous nature of windshield washer fluid is evident in the containers in which it is sold, as evidenced by the labels on the containers that identify the contents as a poison. The Court finds that a reasonable adult would know that windshield washer fluid is poisonous and that drinking it is highly likely to cause serious injury or death.

Even if Mrs. Smith did not know that the windshield washer fluid was poison, the Court finds that the language in the Plan precludes recovery of the AD&D benefit as a result of her death. As noted above, it is undisputed that Mrs. Smith voluntarily

consumed the windshield washer fluid. It also is undisputed that windshield washer fluid is extremely poisonous, a fact reflected in the MedlinePlus article. Because Mrs. Smith voluntarily drank a poison, Defendant had the right to deny Plaintiff's claim for the AD&D benefit pursuant to the "Exclusions" section of the Plan. If the intent to consume poison (and commit, or attempt to commit, suicide) was required, there would not be a separate exclusion for suicide or attempted suicide.

The Court also concludes that Defendant had the right to deny Plaintiff's claim for the AD&D benefit pursuant to the "Exclusions" section of the Plan because, according to objective evidence, the ingestion of the washer fluid was not the sole cause of Mrs. Smith's death. As reflected on the Death Certificate, the medical examiner indicated that alcoholic liver disease, hypertension and arteriosclerotic cardiovascular disease were factors contributing to her death. For this reason, the Court concludes that there was preponderance of the evidence to support Defendant's determination, such that Defendant's decision was correct. *McCollum*, 495 F. App'x at 696; *Hoover*, 290 F.3d at 808-09.

The Court is not persuaded by Plaintiff's argument that AD&D benefits should be awarded because the Plan does not: (1) contain a specific exclusion for "ingestion of washer fluid;" (2) identify what a "poison" actually is; or (3) state that <u>all</u> poisons are covered by the exclusion. Plaintiff's arguments ignore that "poison" is not an

ambiguous term and that the voluntary intake of poison is clear. The Court finds that requiring the Plan to state that "all poison" (rather than "poison," as it does now) would not clarify the exclusion. Plaintiff's suggestion that the Exclusions section should have contained a specific exclusion for "ingestion of washer fluid" is not reasonable. If the Court were to adopt that argument, the Plan would have to specifically identify every method of poison a person could voluntarily intake for the exclusion to apply. That requirement would be unwieldy and likely impossible to satisfy – or at least satisfy without necessitating constant updates and amendments to that section.

The Court concludes that Defendant made a correct decision, *Hoover*, 290 F.3d at 808-09, and denies Plaintiff's motion to reverse the denial of his claim for AD&D benefits.

### IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Affirm the Administrator's Decision [Dkt. No. 9] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Reversal of Administrative Denial of Claim for Benefits [Dkt. No. 10] is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's cause of action is **DISMISSED**

**WITH PREJUDICE**.

                    S/Denise Page Hood
                    Denise Page Hood
                    Chief Judge, United States District Court

Dated: May 19, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 19, 2017, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager